# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 12-cr-183 |
| | ) |
| ANTOINE CORTEZ DUTRIEVILLE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court are DEFENDANT ANTOINE DUTRIEVILLE'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS WITH CITATION OF AUTHORITY (Document No. 22) and DEFENDANT ANTOINE DUTRIEVILLE'S MOTION TO PRODUCE EVIDENCE WHICH THE GOVERNMENT INTENDS TO USE UNDER FEDERAL RULES OF EVIDENCE 404(b) AND 609 WITH CITATION OF AUTHORITY (Document No. 23). The government filed a response in opposition to both motions (Document No. 27). Defendant Dutrieville filed a reply and the government filed a sur-reply regarding the suppression motion (Document Nos. 28, 31). On January 30, 2013 the Court conducted an evidentiary hearing/argument, at which the parties agreed that the instant matters could be resolved based on the filings of record and arguments of counsel.[1] The motions are now ripe for disposition.

---

[1] There was no witness testimony, although Defendant submitted the police Report of Investigation (Defendant's Exhibit M) as an exhibit for the record.

Factual and Procedural Background

A federal grand jury issued an indictment which charged Dutrieville with attempt to possess with intent to distribute 100 grams or more of heroin on June 13, 2012, in violation of 21 U.S.C. § 846.  If convicted, Dutrieville faces a statutory mandatory minimum sentence of five years imprisonment.   The charge stems from execution of an anticipatory search warrant at the home of Portia Newell, the mother of Dutrieville's child.  Dutrieville was present in Newell's home at the time.

On October 7, 2010 the Court of Common Pleas of Fayette County, Pennsylvania issued a Final Protection From Abuse Order ("PFA") which provided, inter alia, that: (1) Dutrieville "shall not contact [Newell], or any other person protected under this order, by telephone or by any other means, including through third persons"; (2) Dutrieville "is completely evicted and excluded from" Newell's residence; (3) "Defendant shall have no right or privilege to enter or be present on the premises of Plaintiff"; (4) except for child custody arrangements, "Defendant is prohibited from having **ANY CONTACT** with Plaintiff either directly or indirectly" (emphasis in original); (5) "Defendant shall have no face-to-face contact with the plaintiff and shall not set foot on the premises on which plaintiff's residence is located"; (6) the PFA remains in effect until October 7, 2013; (7) "PLAINTIFF'S CONSENT TO CONTACT BY DEFENDANT SHALL **NOT** INVALIDATE THIS ORDER WHICH CAN ONLY BE MODIFIED BY FURTHER ORDER OF COURT. 23 Pa.C.S.A. § 6108(g)." (capitalization and emphasis in original); and (8) "An arrest for violation of paragraphs 1 through 6 of this order may be without warrant, based solely on probable cause."  Dutrieville concedes that he had been served with the PFA Order and that it was in full force and effect.

On June 8, 2012 a parcel which contained heroin was interdicted by United States Customs and Border Patrol officers at JFK Airport. The amount of heroin was indicative of sales and distribution. The parcel originated in India. As reflected in the affidavit prepared by Homeland Security Special Agent Michael O'Neill, the handwritten mailing address on the actual parcel identified the recipient to be: "Mrs. APARNA BEENA, NO. 18 Walnut St., Union Town, PA 15401." However, the electronic manifest reflected the recipient address to be "59 Millview Drive, Uniontown, PA 15401." In other words, the handwritten address and the electronic address were different. As set forth in the affidavit, in the event of such a conflict UPS is required to deliver the parcel to the electronic address.

Agents repackaged the heroin in a UPS Express Box, placed a "beeper" inside, and re-labeled the box for shipment to the 59 Millview Drive address (i.e., to match the electronic address). On June 12, 2021, United States Magistrate Judge Lisa Lenihan issued an anticipatory search warrant. The search warrant was not limited to the parcel, but also included an itemized list of materials associated with sales of narcotics. See Search Warrant Attachment B (Items to be Seized). The triggering event for execution of the anticipatory search warrant was the parcel being accepted and taken into the premises.

On June 13, 2012, agents arranged for a controlled delivery of the parcel to the 59 Millview Drive address. As described in the police report (Defendant's Exhibit M), surveillance disclosed two black males (one later identified as Dutrieville) and a black female (later identified as Newell) on the front porch of the home at 10:47 a.m. At approximately 11:12 a.m., an undercover officer dressed as a delivery man knocked on the door. Dutrieville answered, took custody of the parcel and carried it into the house. Two minutes later, the beeper inside the parcel activated, signifying that it had been opened. The agents approached the house. After

nobody responded to their "knock and announce," agents entered the home and took Dutrieville into custody at the top of the stairs.

The agents then conducted a search pursuant to the warrant and discovered, inter alia: (1) the contents of the parcel (including heroin) were in a rear bedroom covered by a blanket; (2) the packaging and beeper were in the master bedroom, next to Dutrieville's cell phone (the memory on which had been erased); (3) along with an overnight bag which contained Dutrieville's clothing, personal effects and 45 unused heroin stamp bags; and (4) digital scales and other drug paraphernalia. Agents read Dutrieville his *Miranda* warnings and he agreed to speak to the officers. Dutrieville explained that he did not live at the 59 Millview Drive address, but had been dropped off by a friend that morning. Dutrieville acknowledged that the overnight bag was his and admitted that the empty heroin stamp bags inside it were also his.

Newell arrived at the premises at approximately 12:10 p.m., was given a *Miranda* rights statement, and agreed to talk to the officers. She stated, inter alia, that Dutrieville was the father of one of her six children; that he visited every couple of weeks; and that he would then spend the night. She stated that Dutrieville had been at her home since Monday, June 11, 2012.

When confronted with the conflicting information, Dutrieville admitted that he had been staying at the 59 Millview Drive home since Monday. Dutrieville also "acknowledged that he was the subject of a Protection From Abuse Order (PFA) and was in contempt of a Judges Order not to be at or near NEWELL'S residence." Defendant's Exhibit M at 4. Dutrieville then invoked his desire to speak to a lawyer and questioning ceased. As Dutrieville was being transported to the Allegheny County Jail, he made additional unsolicited, spontaneous comments.

Motion to Suppress Evidence

Dutrieville seeks to suppress evidence obtained from the search of the house, the overnight bag, and the parcel.[2] Defendant contends that the anticipatory search warrant was not supported by probable cause. In particular, he contends that the agents manufactured probable cause by changing the address label on the parcel from the Walnut Street address to the Millview Drive address.[3] In response, the government raised a threshold issue – that Dutrieville lacks standing to challenge the searches. For the reasons set forth below, the Court concludes that Dutrieville does lack standing. Therefore, it does not reach the underlying merits of his challenges.

It is well-established that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171-72 (1969). Whether the protections of the Fourth Amendment are triggered "depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (punctuation and citations omitted). The defendant bears the burden of establishing standing to raise a Fourth Amendment challenge. *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1980). There is a two-pronged hurdle: (1) the individual must display a subjective expectation of privacy; and (2) that expectation must be "one that society is prepared to recognize as 'reasonable.'" *Id*. (citations omitted). For example, in *Rakas*, 439 U.S. at 143 n.12, the United States Supreme Court explained:

---

[2] Although the motion also sought suppression of the statements Dutrieville made in the car to police officers, defense counsel informed the Court after the hearing/argument that Defendant is not pursuing that argument. Similarly, Defendant does not challenge the initial interdiction of the parcel by customs officials.
[3] While somewhat troubling, the Court notes that the re-labeling of the address was fully disclosed in the search warrant affidavit.

5

> Obviously, however, a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate." His presence, in the words of *Jones*, 362 U.S., at 267, 80 S.Ct., at 734, is "wrongful"; his expectation is not "one that society is prepared to recognize as 'reasonable.'"

Defendant contends that he has standing due to his status as an "overnight guest" of Newell. In *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990), the Supreme Court held that Olson's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." The Court explained the rationale underlying this holding as follows:

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.

The Court concluded that Olson's expectation of privacy in the home was "legitimate" and "was rooted in understandings that are recognized and permitted by society" such that he could claim the protection of the Fourth Amendment. *Id*. at 100 (citing *Rakas*). *Compare Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (overnight guest may claim protection of Fourth Amendment, "but one who is merely present with the consent of the householder may not.")

By stark contrast, Dutrieville's presence in the Newell home was not legitimate and is not recognized as valuable by society. In *Washington v. St. Albans Police Dept*., 30 F. Supp.2d 455 (D. Vt. 1998), the Court held that Washington lacked standing to assert Fourth Amendment rights when his presence at the home was in violation of a PFA order. Washington, like

Dutrieville, claimed that the homeowner (the mother of his children) had invited him to be present and had expressed an intent to remove the PFA. *Id*. at 457. The Court explained that even if Washington had a subjective expectation of privacy, "neither this Court nor society in general is prepared to recognize such an expectation as "reasonable" or legitimate." *Id*. The Court stated that "persons who are on premises in direct violation of court orders" are not entitled to assert Fourth Amendment protections.

The same analysis applies to the facts and circumstances of this case. Dutrieville acknowledged that he knew that he was in contempt of the PFA by being present at the 59 Millview Drive house. Newell's invitation was void and without legal effect because the terms of the PFA explicitly provided: "PLAINTIFF'S CONSENT TO CONTACT BY DEFENDANT SHALL **NOT** INVALIDATE THIS ORDER WHICH CAN ONLY BE MODIFIED BY FURTHER ORDER OF COURT. 23 Pa.C.S.A. § 6108(g)." (Emphasis in original). Thus, the Court concludes that Dutrieville has failed to establish a subjective expectation of privacy.

In any event, even if Dutrieville had a subjective expectation of privacy, "neither this Court nor society in general is prepared to recognize such an expectation as reasonable or legitimate." *Id*. "[P]ersons who are on premises in direct violation of court orders" are not entitled to assert Fourth Amendment protections. The PFA was intended to keep Dutrieville away from Newell's home, for the protection of her and potentially others. Dutrieville's status is more akin to the burglar in *Rakas* than to the overnight guest in *Olson*. In sum, Dutrieville lacks any legitimate basis to challenge a search of that home.

Defense counsel contends that even if Dutrieville lacked standing to contest the search of the home, he had a separate privacy interest which enables him to contest the search of his overnight bag. In essence, Defendant reasons that the PFA applied only to Dutrieville's person,

7

and did not prevent Newell from allowing Dutrieville to have an overnight bag stored at her home. The Court is not persuaded. As a procedural matter, Dutrieville has not met his burden to establish standing because he introduced no evidence of separate consent from Newell regarding the overnight bag. Moreover, the facts and circumstances of this case establish that the overnight bag was not separate and distinct from the unlawful visit. Dutrieville did not live at the Newell home, but had brought the overnight bag and his personal effects with him. In *United States v. White*, 2012 WL 5522286 (3d Cir. 2012), in which the Court of Appeals for the Third Circuit held that a possessor of a stolen car lacked standing to challenge a search of his personal effects (a locked document box, closed backpack and red plastic store bag) that were contained therein. The circumstances in this case are analogous. Dutrieville lacks standing to challenge the search of his overnight bag present at the 59 Millview Drive home of Newell.

In accordance with the foregoing, DEFENDANT ANTOINE DUTRIEVILLE'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS WITH CITATION OF AUTHORITY (Document No. 22) will be **DENIED**.

Motion to Produce Evidence

Defendant requests that the Court compel the government to disclose the evidence it intends to introduce at trial pursuant to Fed. R. Evid. 404(b) and 609 (i.e., prior bad acts). The government represents that it has not yet identified the specific bad acts that it will seek to introduce at trial; that it is aware of the requirement to provide "reasonable notice in advance of trial"; and that it will disclose such evidence "at least two weeks prior to trial." Numerous courts have determined that such notice is reasonable. The government further notes that it has already provided a copy of Defendant's criminal record.

In accordance with the foregoing, DEFENDANT ANTOINE DUTRIEVILLE'S MOTION TO PRODUCE EVIDENCE WHICH THE GOVERNMENT INTENDS TO USE UNDER FEDERAL RULES OF EVIDENCE 404(b) AND 609 WITH CITATION OF AUTHORITY (Document No. 23) will be **DENIED WITHOUT PREJUDICE**.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) 12-cr-183 |
| ANTOINE CORTEZ DUTRIEVILLE,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER OF COURT

AND NOW, this 8th day of February, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANT ANTOINE DUTRIEVILLE'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS WITH CITATION OF AUTHORITY (Document No. 22) is **DENIED** and DEFENDANT ANTOINE DUTRIEVILLE'S MOTION TO PRODUCE EVIDENCE WHICH THE GOVERNMENT INTENDS TO USE UNDER FEDERAL RULES OF EVIDENCE 404(b) AND 609 WITH CITATION OF AUTHORITY (Document No. 23) is **DENIED WITHOUT PREJUDICE**.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

CC: Katherine King, AUSA
Marketa Sims, AFPD